# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. CR-09-042-RAW |
| ) | |
| v. ) | |
| ) | |
| KENNY CARL DOSHIER, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER FINDING THE
## DEFENDANT COMPETENT TO STAND TRIAL

The government initiated child pornography charges against the Defendant Kenny Carl Doshier by complaint filed March 31, 2009. On April 3, 2009, the Court found probable cause to believe that the Defendant committed the offenses charged and ordered him detained pending further proceedings. The Court also found reason to question the Defendant's competency to stand trial and *sua sponte* ordered him to undergo a psychological evaluation pursuant to 18 U.S.C. § 4241. *See* Docket No. 13. Forensic psychologist Dr. Jeremiah Dwyer of the Federal Detention Center in Englewood, Colorado ("FCI-Englewood") submitted a sealed Forensic Evaluation dated June 9, 2009 [Docket No. 19], in which he opined that the Defendant is competent to stand trial despite having poor reading and writing skills and borderline intellectual functioning in various cognitive areas. Defense counsel objected to certain aspects of the Forensic Evaluation at the initial setting of the competency hearing on July 2, 2009, but offered no evidence to controvert Dr. Dwyer's opinion or any of the underlying testing on which it was based. The government had expected the

Defendant to stipulate to the results of the Forensic Evaluation (if not its methodology) and therefore did not secure Dr. Dwyer's attendance at the initial setting of the competency hearing. Consequently, the Court continued the competency hearing until July 10, 2009, at which time the Court heard testimony not only from Dr. Dwyer but also from five other witnesses, all of whom were relatives or friends of the Defendant with strong lay opinions about his mental abilities. After hearing this evidence, the Court found that the Defendant was competent to stand trial and arraigned him on the charges contained in the Indictment [Docket No. 15], which came down while the Defendant was still at FCI-Englewood under evaluation. The Court now issues this Opinion and Order Finding the Defendant Competent to Stand Trial in order to memorialize its competency findings.[1]

---

[1] The Tenth Circuit has never directly addressed whether a Magistrate Judge is authorized to finally determine a defendant's competency to stand trial under 18 U.S.C. § 4241 but seems to approve unless a defendant must be forcibly medicated to restore competency. *See, e. g.*, *United States v. Morrison*, 415 F.3d 1180, 1185 (10th Cir. 2005) ("On appeal Defendant raises two issues. His first ground for reversal, which was not raised below, is that the district court was required to exercise de novo review of the magistrate judge's order [requiring forced medication of the defendant] on the facts as well as the law. Defendant may well be correct. There is authority for the proposition."), *citing United States v. Rivera-Guerrero*, 377 F.3d 1064, 1069 (9th Cir. 2004) ("We conclude that an order authorizing involuntary medication is dispositive of a claim or defense of a party, and therefore, under *Maisonville* [*v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990)], it is not among the pretrial matters that can be fully delegated to the magistrate judge under [28 U.S.C.] § 636(b)(1)(A)."). *See also United States v. Archuleta*, 218 Fed. Appx. 754, 755 (10th Cir. 2007) ("A magistrate judge held a competency hearing in March 2006 and determined that Archuleta was not competent to stand trial and ordered that he be remanded to the custody of the Bureau of Prisons for restoration of competency.") [unpublished opinion]. Courts that *have* addressed the issue directly have reached differing results. *Compare United States v. White*, 887 F.2d 705, 709 (6th Cir. 1989) (noting that the district judge could reopen the question of competency at any time even though the magistrate judge had already made a competency determination that was never appealed), *with United States v. Weissberger*, 951 F.2d 392, 398 (D.C. Cir. 1991) ("Weissberger contends, and we agree, that the Magistrate Judge exceeded her authority in ordering the competency evaluation without first receiving a request to do so from a District Judge as required by Local Rule 501."). Neither party has questioned the undersigned Magistrate Judge's

Dr. Dwyer prepared and submitted to the Court a sealed Forensic Evaluation of his opinions as to the Defendant's competency to stand trial. *See* Docket No. 19. The Forensic Evaluation was admitted into evidence at the competency hearing without objection by the Defendant.[2] In summary, the Forensic Evaluation indicated that: (i) there was no evidence

---

authority under 18 U.S.C. § 4241 to finally determine the Defendant's competency in this case, but the undersigned finds that a magistrate judge *does* have such authority for several reasons: (i) there is no statutory indication that such jurisdiction is lacking, *see generally* 18 U.S.C. § 4241; (ii) the need to consider competency often arises prior to indictment, when the *only* judge assigned to the case is a magistrate judge (as was initially the case here), *see*, *e. g.*, *United States v. Hemmings*, 1991 WL 79586, at *4 (D. D.C. May 2, 1991) ("Since a Magistrate Judge is generally the only judicial officer who exercises jurisdiction over a criminal defendant between the time of arrest and the time of indictment, the contention that such a [competency] ruling is beyond the jurisdiction of a Magistrate Judge appears contrary to the intent of [Rules 5 and 5.1 of the Federal Rules of Criminal Procedure]") [unpublished opinion]; and, (iii) even after indictment, the issue of competency must occasionally be resolved *before* the case can make its way to the District Judge, which was also the case here, as the Defendant's competency had to be determined before he could be arraigned. Further, if any doubt *does* remain as to the undersigned's authority to finally determine the Defendant's competency, the District Judge may obviate it simply by applying *de novo* review. *See*, *e. g.*, *Weissberger*, 951 F.2d at 398 ("This error [by the Magistrate Judge] does not invalidate the competency evaluation order, however. As required by 28 U.S.C. § 636(b)(1) (1988), a District Court judge (in this case, the Chief Judge) reviewed the order *de novo* when the defendant opposed it. At the reconsideration hearing, the Chief Judge made findings based upon his independent review of the entire record. This *de novo* review cured any arguable defect in the original order.") [footnotes omitted]. *See generally* 28 U.S.C. § 636(b)(1)(B) & (C) (providing for referral and *de novo* review of matters outside the jurisdiction of a United States Magistrate Judge, including evidentiary hearings in felony criminal proceedings).

[2]   As discussed above, defense counsel *did* object to aspects of the Forensic Evaluation at the initial setting of the competency hearing on July 2, 2009. Counsel's objections were: (i) that he was not allowed to communicate with the Defendant during the evaluation; (ii) that Dr. Dwyer was provided copies of all the discovery in the case, including depictions of child pornography that counsel contended was not relevant to a competency determination; and, (iii) that he needed a court-appointed expert (although it is not entirely clear whether this was to counter Dr. Dwyer's findings or to assist counsel in communicating with the Defendant). Counsel never again mentioned his inability to communicate with the Defendant during the evaluation, and the Court cannot see how the Defendant was prejudiced thereby. With regard to the other objections, the Court observes that Dr. Dwyer is himself a court-appointed expert and that defense counsel has yet to show any need for additional expert assistance. Further, Dr. Dwyer testified at the competency hearing that he requested all available materials from both the government and the defense so he could fully

to suggest that the Defendant's "intellectual functioning [was] below borderline range in any domain[,]" that he was suffering from "any major mood disturbances" or "acute emotional or mental symptoms with intensity of duration necessary to meet applicable criteria for diagnosable symptom disorders" or that his "symptom profile was . . . of a nature or magnitude to be considered in the clinical range, when compared to the average outpatient client"; (ii) the Defendant's general cognitive ability and verbal reasoning ability (*i. e.*, his ability to articulate what he was thinking) were in the borderline range of functioning, his nonverbal reasoning ability was in low average range of functioning, and his ability to recall new information after a brief interval and his receptive vocabulary were in the average range of functioning; (iii) the Defendant might "experience some difficulty in keeping up with a peer of average intellectual functioning in many areas that require age-appropriate thinking and reasoning abilities," *e. g.*, compared to his peers, the Defendant had "less developed verbal and nonvervbal abilities," performed better on tasks involving nonverbal memory than on tasks assessing verbal memory and exhibited receptive vocabulary that "exceeded his verbal functioning by a fairly large margin"; and (iv) the Defendant had an "above average knowledge of basic legal concepts related to competency to stand trial" and an "adequate knowledge of skills necessary to assist in his defense." Dr. Dwyer concluded in the Forensic Evaluation that although the Defendant exhibited "below average cognitive functioning

---

appreciate what the Defendant was facing and properly evaluate whether the Defendant could understand and assist counsel. Thus, to the extent there were any objections to the admission of the Forensic Evaluation into evidence at the competency hearing, they are hereby overruled.

compared to the general population," his ability to understand the nature and consequences of the proceedings against him and to assist counsel in his defense" was not substantially impaired thereby.

Dr. Dwyer also testified at the competency hearing as to the tests he administered to the Defendant and the conclusions he reached as to the Defendant's competency to stand trial. Defense counsel cross-examined Dr. Dwyer vigorously and presented testimony from friends and relatives that generally contradicted Dr. Dwyer's conclusions that the Defendant could understand the charges against him and that he could adequately assist in his defense. In particular, the witnesses presented by the defense testified: (i) that the Defendant's intellectual functioning was no better than that of a young child, and that this had been the case his whole life, *i. e.*, that the Defendant was "mentally retarded" as those lay witnesses understood it; (ii) that the Defendant could not read or write; and (iii) that when the Defendant could not understand (which was often), he would simply smile and stare. On rebuttal, Dr. Dwyer testified that none of what he heard from the defense witnesses (who were not interviewed during the evaluation) surprised him or caused him to doubt his conclusions as to the Defendant's competency to stand trial.

The Court gives much credit to the testimony of the witnesses presented by the defense, all of whom are friends or relatives of the Defendant who have known him for years, are well-acquainted with his functional limitations in the "real world" and undoubtedly have his best interests at heart. The Court also gives much credit to the concerns of defense counsel, who likewise clearly has the Defendant's best interests at heart and undoubtedly

understands how difficult it will be to adequately defend him given his limitations. But the Court is persuaded in the final analysis by the opinion of Dr. Dwyer that the Defendant is competent to stand trial notwithstanding his functional limitations. Dr. Dwyer evaluated the Defendant thoroughly and determined that he was not mentally retarded in a clinical sense, *i. e.*, mental retardation is defined by an IQ less than 70, while the Defendant's full-scale IQ is 77, his verbal IQ is 75 and his performance IQ is 83. Dr. Dwyer added that even persons who *are* mentally retarded may nevertheless be competent to stand trial and cited examples in the Forensic Evaluation. Further, although Dr. Dwyer concedes that the Defendant would have significant difficulty reading and digesting the evidence by himself, there is no indication that the Defendant would not understand if assisted in this process by his very capable attorney. In this regard, Dr. Dwyer opined that the Defendant would understand if pleadings and written evidentiary materials were read and explained to him, and even his own witnesses indicated that he could understand explanations given in simple terms.

In some respects, the Defendant appears to be quite capable notwithstanding his cognitive limitations. He drives himself to work daily (and therefore must have passed tests both written and skill-based) and has maintained employment for many years at Walmart. The Defendant operates his own personal computer at home and, according to testimony at the preliminary/detention hearing, has improved his reading and writing abilities as a result. He has also apparently acted as a babysitter for at least one relative. Furthermore, the Court has observed the Defendant closely on several occasions and has not seen him behave as the witnesses testified he does when he does not understand, *i. e.*, the Court has never seen the

Defendant simply smile and stare silently when addressed by others. On the contrary, the Defendant gave appropriate answers when questioned by the Court at his initial appearance on April 1, 2009, and at his arraignment on July 10, 2009, and indicated to the Court's satisfaction on both occasions that he understood his rights, the charges against him and the punishment upon conviction. He also testified effectively at his preliminary/detention hearing about his activities and other matters. In short, the Court has seen nothing in the Defendant's behavior that indicates he does not understand any aspect of the proceedings against him, or that calls into question any of the evidence as to the Defendant's competency provided by Dr. Dwyer.

The Court finds that there is not "reasonable cause to believe that the [D]efendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense" and that the Defendant therefore is competent to stand trial herein. 18 U.S.C. § 4241(a).

**IT IS SO ORDERED** this 23rd day of July, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**